IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON BALLOU, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) No. 11 C 8465 |
| v. | ) ) |
| | ) Judge John J. Tharp, Jr. |
| ITALK, LLC d/b/a I-TALK WIRELESS, LLC and AMIR BISHAI, | ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jason Ballou alleges that his former employer, iTalk, LLC ("i-Talk"),[1] violated the Fair Labor Standards Act by failing to pay overtime to employees who worked over 40 hours in a workweek and by failing to pay the minimum wage, or any wage at all, for the time employees spent in training. Ballou moves to conditionally certify a collective action comprising all similarly-situated employees who were subjected to i-Talk's allegedly wrongful policies. For its part, i-Talk has asserted three counterclaims against Ballou individually, alleging that he breached a non-compete agreement, breached a contract to repay a loan, and committed fraud. Ballou moves for summary judgment on each of i-Talk's counterclaims.

For the reasons explained in detail below, Ballou's motion for conditional certification is granted with respect to his claims that i-Talk (1) failed to pay for time spent in introductory training, (2) deducted $125 from employees' pay for start-up costs, (3) automatically deducted 60 minutes per day for meal breaks, and (4) "shaved" employees' time through its clock in and

---

[1] Ballou also names i-Talk's owner and president, Amir Bishai, as a defendant. For purposes of this opinion, the Court will refer to both defendants jointly as i-Talk.

out policy. Ballou's motion for summary judgment on i-Talk's counterclaims is denied in all respects.

## BACKGROUND

i-Talk sells wireless services, products, and accessories to customers throughout the state of Illinois, and is an "employer" within the meaning of the FLSA. At its fifteen retail stores, i-Talk employs retail sales representatives who are tasked with selling Verizon products and services. All of i-Talk's retail sales representatives share a common job description and are classified as "nonexempt" from the FLSA, meaning that i-Talk must pay them overtime if they work more than 40 hours in a workweek. Retail sales representatives are paid an hourly wage (generally $9.13 per hour), and they are also eligible to receive commissions or bonuses. They are all subject to a common set of general policies known as the "Do's and Do Not's."

According to Ballou, i-Talk subjected its retail sales representatives to five standard practices in order to withhold their wages and reduce i-Talk's payroll obligations. First, i-Talk required most of its retail sales representatives (other than those with previous experience in wireless) to complete 80 hours of training before they were allowed to begin employment with i-Talk. Prior to November 2011, i-Talk's practice was not to pay the retail sales representatives for their 80 hours of training time, but to provide a "discretionary signing bonus" in an amount sufficient to provide the minimum wage for time spent in training to employees who remained employed with i-Talk for 90 days after completing the training. Second, i-Talk deducted $125 from each retail sales representative's initial paycheck as an "on-boarding expense deduction" to offset the costs of providing the employees with name tags, lanyards, business cards, etc. Third, i-Talk automatically deducted 60 minutes per day from each retail sales representative's compensable time for an unpaid meal break regardless of whether the employee actually worked

2

during their allotted meal break. i-Talk's email policy required the retail sales representatives to check their emails at least once every 30 minutes throughout their shifts, and as a result, Ballou claims, employees' meal breaks were interrupted and were less than 60 minutes in length. Fourth, i-Talk maintained a policy that prohibited retail sales representatives from clocking in more than five minutes before the start of their shifts or from clocking out more than ten minutes after the end of their shifts. When the retail sales representatives clocked in too early or clocked out too late i-Talk would not compensate them for the extra time worked unless the employee sent an email to a timekeeper to inform them that they had worked outside of their regularly scheduled hours. Fifth, Ballou alleges that i-Talk engaged in a common scheme to withhold commissions and final wages owed to retail sales representatives who left the company by failing to pay employees their final paychecks.

Ballou worked as a retail sales representative for i-Talk at one of its retail locations between August 19, 2011, and approximately October 11, 2011. Before starting on the sales floor, Ballou participated in a two-week (80 hour) training period which was uncompensated pursuant to his employment agreement. Rather than pay employees directly for this training period, i-Talk's policies provided that employees, like Ballou, were eligible for a "bonus" payment of $660 (calculated to equal the Illinois minimum wage of $8.25 per hour times 80 hours) after 90 days of employment. This payment was tied to the training program; employees who did not go through the training program (because they had previous experience) did not receive the bonus payment. But rather than waiting, Ballou asked for and received his $660 bonus on September 13, 2011, less than a month after he had completed the training. At the time that he asked for his bonus, Ballou was actively seeking employment with other employers. Ballou ultimately received an offer to work at Wal-Mart, which he accepted. On approximately

October 11, 2011, Ballou notified i-Talk that he was quitting effective immediately. i-Talk withheld Ballou's final paycheck of $585 because Ballou had been paid his $660 bonus early and he left i-Talk prior to completing a full 90 days of employment.

The parties agree that Ballou entered into an employment agreement with i-Talk on August 19, 2011.[2] The employment agreement contains a Non-Competition clause stating that for six months after his termination from i-Talk Ballou could not directly or indirectly:

> conduct, engage in, have any interest in, or aid or assist anyone else to conduct, engage in, or have an interest in the Wireless Business within a fifty (50) mile radius of the location or locations at which [Ballou] worked for [i-Talk].

The employment agreement defined the term "Wireless Business" as follows:

> THAT, WHEREAS, [i-Talk] and its Affiliated Entities, as defined below, are engaged primarily in the business of selling wireless products and services (the "Wireless Business") under an agreement with Cellco Partnership d/b/a Verizon Wireless Services . . . .

Soon after leaving i-Talk, Ballou began working at a Wal-Mart store approximately 30 miles away from the i-Talk location at which he had previously worked. At Wal-Mart, Ballou sold cell phones and cell phone services, but he claims that he never sold Verizon products or services.

After Ballou brought this lawsuit, but before he moved to preliminarily certify it as a collective action, i-Talk paid Ballou an unconditional sum of $1,620 to compensate him for (1) the 15 overtime hours he claimed to have worked without pay because of i-Talk's time system policies ($206), (2) his final paycheck that had been withheld ($585), (3) liquidated damages ($670), and (4) interest ($159).

---

[2] Ballou claims that he began working for i-Talk on August 8, 2011, Ballou Dec. (Dkt. 35-2) ¶ 2, so he presumably signed the employment agreement after he had begun his training.

4

Ballou now moves to conditionally certify his claim as a collective action under the FLSA, allowing other retail sales representatives to "opt-in" as plaintiffs. Ballou also moves for summary judgment on each of i-Talk's three counterclaims. i-Talk opposes both motions.

## DISCUSSION

**I.     Ballou's Motion for Conditional Certification**

Under the FLSA, plaintiffs may bring a collective action to recover unpaid overtime compensation on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Additional would-be plaintiffs in FLSA collective actions must "opt in" to the lawsuit if the court allows conditional class certification. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010).

Neither Congress nor the Seventh Circuit has specified the procedure courts should use to decide FLSA certification and notice issues, but collective FLSA actions in this district generally proceed under a two-step process. *See, e.g., Salmans v. Byron Udell & Assoc., Inc.*, No. 12 C 3452, 2013 WL 707992, *2 (N.D. Ill. Feb. 26, 2013); *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004).

First, the plaintiff has the burden of showing that there are other similarly situated employees who are potential claimants. *Russell*, 575 F. Supp. 2d at 933; *Mielke*, 313 F. Supp. 2d at 762. To meet this burden, "the plaintiff must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Russell*, 575 F. Supp. 2d at 933 (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). Courts apply a "lenient interpretation" of the term "similarly situated" in deciding whether a plaintiff has made the required showing. *Jirak v.*

5

*Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008). If the plaintiff is able to show that other potential plaintiffs are similarly situated, the court may conditionally certify the case as a collective action and allow the plaintiff to send notice of the case to similarly situated employees who may then opt in as plaintiffs. *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007).

In the second step of the collective action certification process, following the completion of the opt in period and discovery, the defendant may ask the court to "reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011). During the second step, if the court finds insufficient similarities between the plaintiffs, it may revoke conditional certification or divide the class into subclasses. *Id.*; *Russell*, 575 F. Supp. 2d at 933.

This case is currently at step one of the analysis. Ballou claims that he has satisfied the "modest factual showing" necessary for conditional certification, but i-Talk argues that he has failed to carry his burden.

### A. i-Talk Subjected Retail Sales Representatives to Four Common Policies.

Ballou has satisfied his burden to show that he and other sales representatives were subject to certain common policies because i-Talk's part owner in charge of day-to-day operations, Amir Bishai, admitted in his deposition that i-Talk maintained the alleged common policies and that they were generally applicable to all retail sales representatives.

Ballou first seeks to certify a collective action of all retail sales representatives that i-Talk failed to compensate for their initial training hours. Bishai admitted that prior to November 2011, i-Talk maintained a policy of not compensating its retail sales representatives for their 80 hours

of training unless they remained employed by i-Talk for at least 90 days after the training was complete. Bishai Dep. (Dkt. 35-1) at 93. In his declaration, Ballou alleges that he, likewise, was not compensated for the time he spent in i-Talk's training program.[3] Ballou Decl. (Dkt. 35-2) at ¶ 5. Therefore, Ballou has demonstrated that he and other retail sales representatives were victims of a common policy allegedly in violation of the law, which is all that is required for conditional certification.

Bishai further admitted that i-Talk deducted $125 from new retail sales representatives' paychecks as an "on-boarding expense deduction." Bishai Dep. (Dkt. 35-1) at 58. And Bishai also admitted that i-Talk each day deducted 60 minute unpaid lunch breaks from its employees' paychecks despite a policy requiring retail sales representatives to check their emails every 30 minutes. *Id.* at 55-56, 117-18. Finally, Bishai admitted that i-Talk had a policy of "shaving" retail sales representatives' hours if they punched in more than five minutes prior to the beginning of a scheduled shift or punched out more than ten minutes after the end of a scheduled shift. *Id.* at 48-51. Therefore, because i-Talk does not dispute that it subjected its retail sales representatives, including Ballou, to these common policies, the Court will conditionally certify a collective action on behalf of all retail sales representatives who were harmed by any of these allegedly illegal policies.

> **B.  Ballou Fails to Show that i-Talk Withheld Commissions or Final Wage Payments From Other Sales Representatives.**

Ballou fails, however, to make the required "modest factual showing" that other retail sales representatives were subject to i-Talk's policy of "fail[ing] to pay all wages due, including

---

[3] i-Talk disputes this allegation, and claims that Ballou is not similarly situated to other retail sales representatives because Ballou *was* compensated for his training time. The Court discusses i-Talk's argument in detail, and ultimately rejects it. *See infra* pp. 10-11.

7

commissions earned and final pay." In his declaration, Ballou alleges that i-Talk failed to pay him the wages and commissions that were due at the time of his separation from the company. Ballou Decl. (Dkt. 35-2) ¶ 9. But he presented no evidence whatsoever that other similarly situated employees suffered from the same policy. "Unless defendant admits in its answer or briefs that other similarly situated employees exist, plaintiffs cannot rely on their allegations alone to make the required modest factual showing." *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007). Because "[*s*]*ome* evidence is required" to show that other similarly situated employees exist, Ballou fails to meet his burden with respect to his claim that i-Talk fails to pay commissions and final pay to its retail sales representatives. *Boyd v. Alutiiq Global Solutions, LLC*, No. 11 C 753, 2011 WL 3511085, *6 (N.D. Ill. Aug. 8, 2011) (emphasis in original). Therefore, the Court will not conditionally certify this claim, and it will not be part of the FLSA collective action that the plaintiffs pursue against i-Talk.

### C. i-Talk's Objections to Certification Are Not Persuasive.

Though i-Talk has admitted to subjecting its retail sales representatives to many of the common policies that Ballou complains of, it nonetheless raises several objections to conditional certification. First, i-Talk argues that Ballou is not similarly situated with other retail sales representatives with respect to his training hours because Ballou "was in fact paid for the [training] time in the form of the bonus paid to him on September 13, 2011." Resp. Br. (Dkt. 44-1) at 5. But i-Talk's own filings undercut that assertion: in its response to Ballou's Rule 56.1 statement of undisputed facts, i-Talk denied that Ballou's bonus was "training compensation," and stated that the bonus was "a discretionary amount which the company voluntarily paid." Dkt. 79 ¶ 23. Thus, it is unclear whether Ballou was compensated for his training hours. And i-Talk cannot have it both ways; i-Talk either compensated Ballou for his training hours or it paid him a

8

discretionary bonus amount, but it did not do both. The Court need not conclusively determine at this stage whether i-Talk compensated Ballou for his training hours. Rather, it is enough for the Court to find that Ballou has made a "modest factual showing" that he, like the other potential plaintiffs, was not compensated for the time he spent in training.

Second, i-Talk argues that Ballou's allegations that it required retail sales representatives to work off the clock—by automatically deducting a 60 minute unpaid lunch and "shaving" time worked before or after a scheduled shift—are not susceptible to collective treatment because of the highly individualized analysis of each potential opt-in plaintiff's circumstances. According to i-Talk, to determine whether an FLSA violation occurred a fact-finder will have to determine what uncompensated hours an employee actually worked, when the employee performed that work, and how many other hours the employee worked within that same week. i-Talk argues that these inquiries are too individualized to address as a collective action. However, courts in this district have previously rejected similar arguments that collective actions should not be conditionally certified because they "may later require a more individualized inquiry." *Allen v. City of Chicago*, No. 10 C 3185, 2013 WL 146389, *8 (N.D. Ill. Jan. 14, 2013) (conditionally certifying collective action seeking overtime for time off duty police officers spent working via BlackBerry); *Brand v. Comcast Corp.*, No. 12 C 1122, 2012 WL 4482124, *6 (N.D. Ill. Sep. 26, 2012) (conditionally certifying collective action seeking overtime pay for work performed prior to and after scheduled shifts and during unpaid lunch breaks); *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) (conditionally certifying collective action alleging that employer had illegal practice of editing employee time sheets to remove overtime work). While the amount of overtime each retail sales representative was unfairly denied may have varied, "the policy that allegedly violated the FLSA did not vary." *Allen*, 2013 WL 146389 at *8. "At this

stage, the court is tasked with determining whether it can 'envision a scenario' where [Ballou] and potential collective action members are similarly situated." *Brand*, 2012 WL 4482124 at *5 (quoting *Persin v. CareerBuilder, LLC*, No. 05 C 2347, 2005 WL 3159684, *1 (N.D. Ill. Nov. 23, 2005)). Here, it can. Though the possibility exists that individual issues will eventually predominate in Ballou's "off the clock" claims, he has shown a common policy affecting other retail sales representatives, and therefore conditional certification is appropriate.

Third, i-Talk claims that Ballou is subject to individual defenses because he signed a general release of all claims and because his own "off the clock" claims were rendered moot when i-Talk gave him an unconditional payment to compensate him for the 15 hours of overtime that it allegedly owed to him. i-Talk first made this argument in a motion to dismiss, which it thereafter abandoned.[4] *See* Dkt. 46-47. Ballou, however, denies that he signed the release and also denies that i-Talk has fully compensated him for all of his time worked, including time worked through unpaid meal breaks and time that was shaved from his pay. As things currently stand, the Court cannot determine whether Ballou released his claims.

Further, Ballou's claim is not moot. A payment from the defendant to the plaintiff will render a complaint moot only if the defendant's payment is sufficient to make the plaintiff whole. *See Gates v. City of Chicago*, 623 F.3d 389, 413 (7th Cir. 2010) ("A tender is sufficient when it makes the plaintiff whole."). Ballou requested that the Court award not only the relief that i-Talk has tendered, but also, among other damages, "all costs and reasonable attorneys' fees incurred prosecuting [his] claim." Am. Cmplt. (Dkt. 17) at 14. Thus, to moot Ballou's claim, i-Talk's tender should have at the very least "include[d] the filing fees and other costs under 28

---

[4] i-Talk never presented its motion or prosecuted it in any way, and the Court issued an order on March 22, 2013 indicating its understanding that i-Talk had withdrawn its motion. *See* Dkt. 90. i-Talk did not object or otherwise respond to the Court's order.

U.S.C. § 1920." *Gates v. Towery*, 430 F.3d 429, 431 (7th Cir. 2005). Since i-Talk's payment to Ballou apparently did not include these amounts, i-Talk has not satisfied Ballou's demands and the case is not moot. *See id.* at 432 ("To eliminate the controversy and make a suit moot, the defendant must satisfy the plaintiffs' *demands*; only then does no dispute remain between the parties.") (emphasis in original). And i-Talk cannot save its mootness argument by couching it in terms of an individualized defense that would render Ballou dissimilar from the proposed class. i-Talk failed to take the necessary steps to moot Ballou's claim when it had the chance (*i.e.*, prior to Ballou filing his motion for conditional certification); it cannot now prevent certification by claiming that Ballou's claim is subject to an individualized defense of mootness. As explained above, the individualized "mootness" defense fails, and any other Ballou-specific defenses i-Talk raises are, at most, potential issues of fact that *may* later require an individualized inquiry (if i-Talk pursues them). Conditional certification is appropriate, however, even though these individualized issues could conceivably require decertification at a later stage. *See Allen*, 2013 WL 146389 at *8; *Brand*, 2012 WL 4482124 at *6; *Heckler*, 502 F. Supp. 2d at 780.

Fourth, i-Talk argues that its $125 "on-boarding expense deduction" does not implicate the FLSA because the deduction did not necessarily reduce hourly wages below the federal minimum wage, nor did it cause i-Talk to fail to pay overtime at a rate of one-and-a-half times the retail sales associates' regular rate of pay. This, however, is an argument as to the merits of Ballou's claims, and it is premature to consider that argument at this time. *See Allen*, 2013 WL 146389 at *9; *Brand*, 2012 WL 4482124 at *7 ("The question of whether Comcast violated the FLSA with its on-call policy . . . is a question for another day."); *Nehmelman*, 822 F. Supp. 2d at 751 ("the court does not consider the merits of a plaintiff's claims" at the conditional certification stage); *Russell*, 575 F. Supp. 2d at 935 ("determination of the merits of the case is

premature" at the conditional certification stage). i-Talk is free to later argue that its $125 deduction did not violate the FLSA; for now, however, because Ballou has identified other similarly situated employees subject to the same policy, conditional certification is appropriate.

Fifth and finally, i-Talk argues that Ballou and/or his counsel have committed discovery misconduct severe enough to render him unable to provide fair and adequate representation to class members. According to i-Talk, Ballou failed to produce a notebook in which he maintained personal notes of the hours he had worked for i-Talk and the commissions he believed he had earned, and he also admitted that certain pages of notes regarding his training period no longer existed. Further, Ballou produced "screen shots" from the timekeeping system at i-Talk in such a way that it was impossible to link the shots to particular dates, although Ballou retained electronic records that did identify the dates of the screen shots. Based on this alleged misconduct, i-Talk argues that Ballou has failed to fully and adequately participate in the discovery process, and therefore that he is an inappropriate class representative.

i-Talk's fifth argument fails for several reasons. First, as i-Talk recognized, there is no "adequacy of representation" requirement for FLSA certification. *See, e.g., Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 573 n. 14 (D. Md. 2012) ("Most courts articulating the requirements for conditional certification of a collective action . . . have concluded that the FLSA does not incorporate Rule 23's adequacy criterion for conditional certification.") (internal quotation and alterations omitted). An inadequate class representative is, at most, "an equitable consideration at issue in determining whether to certify a putative class." *In re FedEx Ground Package Sys., Inc.*, 662 F. Supp. 2d 1069, 1082 (N.D. Ind. 2009).

Next, i-Talk fails to identify any authority from any jurisdiction supporting its argument that an FLSA class representative may be disqualified for discovery misconduct. The only FLSA

cases it cites on this point state that conditional certification should be denied where the class representative is not similarly situated to the proposed plaintiff class. *See, e.g., id.* at 1082; *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1315 (M.D. Ala. 2002). Ballou does not have that problem; he appears to be similarly situated to the proposed plaintiff class. And finally, the sort of alleged discovery misconduct i-Talk complains of here is more appropriate for a motion to compel or a motion for sanctions as opposed to an argument against conditional class certification. The Court certainly does not condone discovery misconduct, and i-Talk is free to raise its discovery issues in the proper context after conducting a Rule 37 meet and confer with Ballou. But this alleged discovery misconduct is not sufficient grounds to deny Ballou's motion for conditional class certification.

### D. Form of Class Notice

i-Talk has raised several objections to Ballou's proposed form of notice and consent, and Ballou responds that he is willing to make some changes to the notice. The Court directs the parties to meet and confer regarding the notice, and to file a motion within 14 days, agreed or setting forth the parties' respective positions, as to the form of the notice.

## II. Ballou's Motion for Summary Judgment on i-Talk's Counterclaims

### A. Count I: Breach of Non-Compete Agreement

i-Talk first claims that Ballou violated the non-compete agreement by selling cell phones and cell phone services for a competitor shortly after leaving i-Talk. Ballou moves for summary judgment on that count based solely on an argument that the restrictive covenant he signed with i-Talk did not purport to bar his work selling phones at Wal-Mart. Ballou makes no challenge to the legal validity of the restrictive covenant, so the viability of i-Talk's counterclaim turns on interpretation of the disputed term included in the agreement, namely the meaning of "Wireless Business."

It is undisputed that Ballou entered into an employment agreement that, for six months after his termination from i-Talk, restricted his ability to directly or indirectly:

> conduct, engage in, have any interest in, or aid or assist anyone else to conduct, engage in, or have an interest in the Wireless Business within a fifty (50) mile radius of the location or locations at which [Ballou] worked for [i-Talk].

Ballou argues that the agreement limits the meaning of the term "Wireless Business" to the sale of Verizon wireless products or services, while i-Talk argues that the term refers to the sale of any wireless products or services.

i-Talk's interpretation is plainly correct. Read objectively, "Wireless Business" unambiguously refers to the sale of *any* wireless products or services:

> THAT, WHEREAS, [i-Talk] and its Affiliated Entities, as defined below, are engaged primarily in the business of selling wireless products and services (the "Wireless Business") under an agreement with Cellco Partnership d/b/a Verizon Wireless Services . . . .

The definition of the defined term appears in the clause just before the term; the remainder of the sentence following the defined term merely describes i-Talk's activities relating to the defined term. In other words, the "Wireless Business" is "the business of selling wireless products and services." i-Talk participates in the Wireless Business under an agreement with Verizon. Therefore, the plain language of the agreement prohibited Ballou from engaging in the business of selling wireless products and services within six months of leaving i-Talk and his challenge to i-Talk's counterclaim on the basis that the covenant did not bar his work for Wal-Mart must be denied. The fact issue of whether Ballou sold Verizon products is immaterial to the resolution of this particular dispute.

  **B. Count II: Breach of Contract to Repay a Loan**

Next, i-Talk alleges that Ballou breached a contract to repay the $660 "loan" it gave him in the form of an early bonus. To succeed on a cause of action for breach of contract, a plaintiff

14

must establish: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007). Ballou argues that he is entitled to summary judgment because there was never a contract to repay the $660. But viewing the record in the light most favorable to i-Talk and drawing all inferences in its favor, as the Court must on Ballou's motion for summary judgment, *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010), i-Talk has adequately shown the existence of a contract requiring Ballou to repay the loan.

As an exhibit to its counterclaims, i-Talk attached a payroll deduction form in which Ballou allegedly "agree[d] to repay the full amount [of the signing bonus] if he left [i-Talk's] employ prior to the ninetieth day of his employment." Counterclaim (Dkt. 18) ¶ 9; Payroll Deduction Form (Dkt. 18-2). i-Talk now admits, however, that it required Ballou to sign the "blank" payroll deduction form on his first day of employment for use in the event that i-Talk would later pay Ballou his bonus "early" but Ballou would leave i-Talk before ninety days of employment. i-Talk Resp. to Facts (Dkt. 79) ¶¶ 27-28. i-Talk later filled in the form with details specific to Ballou. Ballou claims that these facts negate the import of the form, but that is wrong. At the time he signed it, the "blank" payroll deduction form read: "Employee did not complete the necessary number of days employed with Company to keep the Employment Signing Bonus." Payroll Deduction Form (Dkt. 18-2); Bess Dep. (Dkt. 67-2) at 82-83. Further, i-Talk employee Sierra Bess testified that she explained the payroll deduction form to Ballou before he signed it.[5] Bess Dep. (Dkt. 67-2) at 86. When he signed it, then, Ballou knew or should have

---

[5] Ballou notes that Bess's testimony is unclear as to the substance of Bess's explanation of the form. Reply Br. (Dkt. 81) at 2-3. While Bess's testimony is indeed ambiguous, for the purposes of summary judgment the Court draws the permissible inference that Bess explained to Ballou

15

known that the form would allow i-Talk to deduct the amount of the loan from his paycheck if he left the company within ninety days.

Therefore, i-Talk has presented sufficient evidence of a contract, and Ballou's motion for summary judgment as to this count is denied.

### C. Count III: Fraud

Ballou also moves for summary judgment on i-Talk's fraud claim, arguing that i-Talk had no right to withhold the $660 that he requested because the funds were compensation for the time he spent in orientation. Motion (Dkt. 66) at 6. Ballou's argument, however, depends on a successful resolution of his affirmative claim against i-Talk for failing to pay him for the time he spent in training. Ballou has not moved for summary judgment on that claim, and he has not advanced evidence sufficient to eliminate any factual dispute as to whether he is entitled to payment for that time. *See, e.g., McLaughlin v. Ensley*, 877 F.2d 1207, 1209 (4th Cir. 1989) (explaining that question whether trainees must be paid for orientation time depends on "whether the employee or the employer is the primary beneficiary of the trainees' labor"). Therefore, Ballou's argument that he could not have committed fraud because he was entitled to the $660 fails.

Further, i-Talk has propounded sufficient evidence to maintain its fraud claim. "[M]aking a promise while planning not to keep it is fraud." *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) (emphasis omitted). Ballou admits that he requested that i-Talk immediately pay his signing bonus beginning in early September 2011, and he further admits that at that same time he was actively looking for employment at employers other than i-

---

the plain meaning of the form's language—that by signing the form he agreed that i-Talk would be entitled to recover the signing bonus amount if he did not complete the necessary number of days employed.

16

Talk and that he received an offer to work for Wal-Mart, which he accepted in mid-September 2011. Resp. to Add'l Facts (Dkt. 82) ¶¶ 1-2, 4-5. As explained above, i-Talk has presented evidence that Ballou at least implicitly promised to return i-Talk's $660 payment if he left his employment prior to spending ninety days with the company. And Ballou's promise can be imputed to his requests that i-Talk pay him the bonus early; i-Talk could have reasonably understood Ballou's request to include an implied promise to return the money if he resigned early. But there is substantial evidence that that Ballou made that promise with a present intent to leave his employment within the ninety day period while keeping the money. Therefore, Ballou cannot establish an entitlement to summary judgment on i-Talk's fraud claim.

*   *   *

For the reasons set forth above, Ballou's motion for certification is granted in part, and this action is conditionally certified as a collective FLSA action. Ballou's motion for summary judgment is denied.

Entered: July 31, 2013

_____
John J. Tharp, Jr.
United States District Judge